UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **MUBASHIR MAQBOOL, P.E.,**<br>    **Plaintiff** | **CIVIL ACTION** |
| **VERSUS** | **NO. 25-1210** |
| **SEWERAGE AND WATER BOARD**<br>**OF NEW ORLEANS,**<br>    **Defendant** | **SECTION: "E" (5)** |

## ORDER AND REASONS

Before the Court is Pro Se Plaintiff Mubashir Maqbool's request for a preliminary injunction.[1] In support of his request, Plaintiff filed two pre-hearing memoranda and two post-hearing briefs.[2] In opposition, Defendant Sewerage and Water Board of New Orleans ("SWBNO") filed a pre-hearing memorandum, a response to Plaintiff's pre-hearing memorandum, and a post-hearing brief.[3] On August 11, 2025, the Court held a hearing on Plaintiff's request. After considering the law, the parties' briefs, and the evidence admitted at the hearing, the Court **DENIES** Plaintiff's request for a preliminary injunction.

## BACKGROUND

Plaintiff alleges that he has been employed by Defendant Sewerage and Water Board of New Orleans since March 2, 2009, and currently serves as a Senior Principal Engineer.[4] On November 12, 2024, Plaintiff alleges that, while at work, he spoke with Norman Aguirre, a customer service employee of Defendant, in an effort to "address a billing discrepancy regarding his personal residential water account, which resulted in an

---

[1] R. Doc. 1 at p. 9.
[2] R. Doc. 10; R. Doc. 18; R. Doc. 26; R. Doc. 27.
[3] R. Doc. 17; R. Doc. 22; R. Doc. 25.
[4] R. Doc. 1 at p. 2.

1

erroneous charge of over $1,500, significantly higher than his usual $120 bill."[5] According to Plaintiff, he "raised concerns about the bill . . . inside SWBNO's main office building"[6] and "did not engage in any threatening, harassing, or intimidating behavior but merely expressed frustration over recurring billing system errors."[7] Defendant, however, characterizes the exchange differently, representing that although "[t]he conversation began innocently enough,"[8] "Plaintiff became increasingly agitated . . . raised his voice, referred to the SWBNO executive director as 'an idiot,' and told Mr. Aguirre that he could 'kick ass.'"[9]

In any event, following the incident, Mr. Aguirre lodged an official grievance report with SWBNO,[10] which prompted an internal investigation and disciplinary proceedings against Plaintiff.[11] On January 6, 2025, Plaintiff's supervisor, Steven Nelson, issued a notice of intent to recommend suspension.[12] The notice provided Plaintiff with the allegations developed during the internal investigation and informed Plaintiff that, "because you continue to exhibit unprofessional and demeaning behavior towards SWBNO employees . . . the department intends to pursue more aggressive disciplinary action against you."[13]

---

[5] *Id.*
[6] *Id.*
[7] R. Doc. 1 at p. 3.
[8] R. Doc. 17 at p. 6.
[9] *Id.*
[10] R. Doc. 29-4.
[11] R. Doc. 17 at p. 7.
[12] R. Doc. 29-13.
[13] *Id.* The notice of intent informed Plaintiff that this was a "Progressive Action," defined as "subsequent instance of conduct for which previous disciplinary action was taken." R. Doc. 29-13. Plaintiff had previously served a 1-day suspension in connection with an incident that occurred at a town hall meeting wherein Plaintiff identified himself as a SWBNO employee and called SWBNO's leadership "a bunch of criminals." R. Doc. 29-20 at p. 2.

On February 3, 2025, Defendant issued Plaintiff a pre-disciplinary letter and a pre-disciplinary hearing notice.[14] The letter informed Plaintiff that a pre-disciplinary hearing was scheduled for February 13, 2025, and stated that the "hearing is your opportunity to respond to the proposed disciplinary action."[15] It outlined the policies Plaintiff was alleged to have violated, recommended a 3-day suspension, and warned that "[s]hould you fail to report as directed for the hearing, you will automatically forfeit your opportunity to respond."[16] The accompanying hearing notice reiterated that Plaintiff was directed to attend the hearing and that, in lieu of appearing, he could submit a written response to be considered.[17] The notice again informed Plaintiff that failure to attend the hearing or to submit a written statement would result in forfeiture of his right to respond to the allegations.[18]

On February 13, 2025, rather than appearing at the pre-disciplinary hearing, Plaintiff submitted a written response to the allegations and the recommended 3-day suspension.[19] In his response, Plaintiff stated: "I write to formally respond to the allegations and disciplinary recommendation outlined in connection with the November 12, 2024, incident. It is my position that these allegations are based on mischaracterizations of my statements and actions, and that the proposed suspension is unjustified."[20] Plaintiff further asked "the committee to carefully review the facts of this case and recognize that the proposed suspension is neither justified nor supported by clear and convincing evidence."[21]

---

[14] R. Doc. 29-14; R. Doc. 29-15.
[15] R. Doc. 29-14 at p. 1.
[16] R. Doc. 29-14.
[17] R. Doc. 29-15.
[18] *Id.*
[19] R. Doc. 29-16.
[20] *Id.* at p. 1.
[21] *Id.* at p. 3.

On June 4, 2025, Defendant issued Plaintiff a determination letter stating that his written response had been considered but, due to his "continuous display of unprofessional and demeaning behavior towards SWBNO employees," the department recommended a 3-day suspension.[22] On July 21, 2025, Defendant prepared a disciplinary action summary hearing report, which reiterated the basis for the disciplinary proceedings, summarized Plaintiff's response, included the witness statements supporting the punishment, and noted two instances of legal review of the document.[23]

Instead of serving his suspension or appealing it to the Civil Service Commission, Plaintiff filed suit in state court seeking an injunction to prevent enforcement of the 3-day suspension.[24] The state court dismissed the suit and entered judgment in Defendant's favor.[25] Plaintiff then filed a complaint in this Court under 42 U.S.C. § 1983, alleging violations of his First and Fourteenth Amendment rights to free speech and due process.[26] Plaintiff sought a temporary restraining order as well as preliminary and permanent injunctive relief preventing enforcement of the suspension and any further discipline.[27] The Court scheduled a telephone status conference with the parties to address Plaintiff's request for a temporary restraining order.[28] On June 23, 2025, the Court held the telephone status conference, during which Defendant agreed to postpone the imposition of the 3-day suspension pending the Court's ruling on Plaintiff's request for a preliminary injunction.[29] Accordingly, the Court denied Plaintiff's request for a temporary restraining

---

[22] R. Doc. 29-17.
[23] R. Doc. 29-18.
[24] R. Doc. 1 at p. 5.
[25] R. Doc. 17-1 at pp. 57-60.
[26] R. Doc. 1 at pp. 1, 4.
[27] *Id.* at pp. 8-9.
[28] R. Doc. 4.
[29] R. Doc. 5.

order,[30] set a hearing date on the request for a preliminary injunction,[31] and issued a scheduling order[32] setting prehearing deadlines.

On August 11, 2025, the Court held a hearing on Plaintiff's request for a preliminary injunction.[33] Plaintiff called David Lockett and himself as witnesses. Mr. Lockett, Plaintiff's coworker from 2009-2022, testified on Plaintiff's behalf. Defendant called Dequila Thompson, Norman Aguirre, Tiara Robertson, Sharita Curtis, and Kimberly Batiste as witnesses. Ms. Thompson, an office assistant employed by Defendant, testified about what she heard during the exchange between Plaintiff and Mr. Aguirre and about the statement she made during the investigation of Plaintiff. Mr. Aguirre, a lead office assistant employed by Defendant, testified regarding the exchange he had with Plaintiff that initiated the disciplinary proceedings. Ms. Robertson, an office support specialist employed by Defendant, testified to what she heard during the exchange between Plaintiff and Mr. Aguirre and to the statement she made during the investigation. Ms. Curtis, an interim employee relations manager employed by Defendant, testified regarding the disciplinary process generally and specifically how it proceeded in Plaintiff's case. Ms. Batiste, the interim HR director, also testified regarding the disciplinary proceedings process. After considering the arguments and evidence presented, the Court took the matter under advisement.[34] This Order now follows.

## **LEGAL STANDARD**

A preliminary injunction under Federal Rule of Civil Procedure 65(a) is an "extraordinary and drastic remedy" that may be awarded only upon a clear showing that

---

[30] *Id.*
[31] *Id.*
[32] R. Doc. 6.
[33] R. Doc. 23.
[34] *Id.*

5

the plaintiff is entitled to such relief.[35] A plaintiff seeking a preliminary injunction must establish (1) a substantial likelihood of success on the merits; (2) a substantial threat of irreparable injury if the injunction is not granted; (3) that the plaintiff's threatened injury outweighs the threatened harm to the party the plaintiff seeks to enjoin; and (4) that granting the preliminary injunction will not disserve the public interest.[36]

None of the four requirements has a fixed quantitative value.[37] Accordingly, in applying the four-part test, "a sliding scale is utilized, which takes into account the intensity of each in a given calculus."[38] This sliding scale requires the district court to balance "the probabilities of ultimate success at final hearing with the consequences of immediate irreparable injury that possibly could flow from the denial of preliminary relief."[39]

The district court exercises discretion in granting or denying a preliminary injunction.[40] Yet, because a preliminary injunction is an extraordinary remedy, it "should not be granted unless the party seeking it has clearly carried the burden of persuasion on all four requirements."[41] Accordingly, the granting of a preliminary injunction is considered "the exception rather than the rule."[42]

The purpose of a preliminary injunction is to preserve the relative positions of the parties until a trial on the merits can be held.[43] "Given this limited purpose, and given the haste that is often necessary if those positions are to be preserved, a preliminary

---

[35] *Munaf v. Geren*, 553 U.S. 674, 689 (2008); FED. R. CIV. P. 65(a).
[36] *Planned Parenthood Ass'n of Hidalgo Cty. Tex., Inc. v. Suehs*, 692 F.3d 343, 348 (5th Cir. 2012).
[37] *Texas v. Seatrain Int'l, S.A.*, 518 F.2d 175, 180 (5th Cir. 1975).
[38] *Id.*
[39] *Klitzman, Klitzman & Gallagher v. Krut*, 744 F.2d 955, 958 (3d Cir. 1984).
[40] *Miss. Power & Light Co. v. United Gas Pipe Line Co.*, 760 F.2d 618, 621 (5th Cir. 1985).
[41] *Suehs*, 692 F.3d at 348.
[42] *Miss. Power & Light Co.*, 760 F.2d at 621.
[43] *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981).

6

injunction is customarily granted on the basis of procedures that are less formal and evidence that is less complete than in a trial on the merits."[44] Because of this, the findings of fact and conclusions of law made by a court deciding whether to grant a preliminary injunction are not binding at the trial on the merits.[45] However, under Rule 65(a)(2), evidence received during a hearing on a request for a preliminary injunction becomes part of the trial record and need not be repeated at trial, provided the evidence would have been admissible at the trial.[46]

    For this Court to issue a preliminary injunction, Plaintiff must first demonstrate a substantial likelihood of success on the merits of his claims.[47] To show a likelihood of success, Plaintiff must present a prima facie case, but need not prove that he is certain to win.[48] When determining whether a plaintiff has met this prong, the Court looks to standards provided by the substantive law.[49] Since no single factor is controlling, courts balance the factors on a sliding scale.[50] Accordingly, when the other factors weigh strongly in favor of an injunction, "a showing of some likelihood of success on the merits will justify temporary injunctive relief."[51] However, regardless of how severe and irreparable the threatened harm may be, and irrespective of the hardships a preliminary injunction or its denial might cause, "the injunction should never issue if there is no chance that the movant will eventually prevail on the merits."[52] The Court will first analyze whether

---

[44] *Id.*
[45] *Id.*
[46] FED. R. CIV. P. 65(A)(2).
[47] *Planned Parenthood Ass'n of Hidalgo Cty. Tex., Inc.*, 692 F.3d at 348.
[48] *Daniels Health Scis., L.L.C. v. Vascular Health Scis., L.L.C.*, 710 F.3d 579, 582 (5th Cir. 2013); CHARLES ALAN WRIGHT, ARTHUR R. MILLER, MARY KAY KANE, ALEXANDRA D. LAHAV, 11A FEDERAL PRACTICE & PROCEDURE § 2948.3 (3d ed. 2025).
[49] *Sepulvado v. Jindal*, 729 F.3d 413, 418 (5th Cir. 2013).
[50] *Texas v. Seatrain Int'l, S.A.*, 518 F.2d 175, 180 (5th Cir. 1975).
[51] *Productos Carnic, S.A. v. Cent. Am. Beef & Seafood Trading Co.*, 621 F.2d 683, 686 (5th Cir. 1980).
[52] *Seatrain Int'l*, 518 F.2d at 180.

Plaintiff has demonstrated a substantial likelihood of success regarding his First Amendment claim before turning to his Fourteenth Amendment claim.

## LAW AND ANALYSIS

**I.    Plaintiff has failed to establish that he is entitled to a preliminary injunction based on his First Amendment claim.**

**A.    Plaintiff has failed to demonstrate a substantial likelihood of success on the merits of his First Amendment retaliation claim.**

Plaintiff seeks a preliminary injunction based on Defendant's violation of his First Amendment right to free speech, alleging that Defendant impermissibly retaliated against him for speaking out on a matter of public concern.[53] To succeed at trial on this claim, Plaintiff must prove that (1) he suffered an adverse employment decision, (2) he spoke as a citizen on a matter of public concern, (3) his interest in the speech outweighs the government's interest in the efficient provision of public services, and (4) the protected speech motivated the adverse employment action.[54]

It is undisputed by the parties that a suspension constitutes an adverse employment decision. Accordingly, the Court will begin by examining the second element of establishing a First Amendment retaliation claim—whether Plaintiff has established, by offering prima facie proof, that he spoke as a citizen on a matter of public concern. This element is commonly broken down into two inquiries: (1) whether the Plaintiff spoke as a private citizen, and (2) whether the Plaintiff spoke on a matter of public concern.

**1.    Plaintiff failed to demonstrate that he spoke as a private citizen on a matter of public concern.**

Regarding the first prong of this inquiry—whether a plaintiff spoke as a private citizen—the Supreme Court held that "when public employees make statements pursuant

---

[53] R. Doc. 1.
[54] *Bevill v. Fletcher*, 26 F.4th 270, 276 (5th Cir. 2022).

8

to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline."[55] When deciding whether a statement is made pursuant to an official duty, the Supreme Court explained that the "critical question . . . is whether the speech at issue is itself ordinarily within the scope of an employee's duties, not whether it merely concerns those duties."[56] Expanding on this principle, the Fifth Circuit has identified several factors for courts to consider in deciding whether an employee spoke pursuant to his official duties or as a citizen, including the employee's job description, whether the speech resulted from special knowledge gained as an employee, and whether the speech was directed internally or externally.[57]

Plaintiff argues that he spoke as a private citizen because his statements were made outside the scope of his duties as an engineer and concerned a personal billing issue.[58] Defendant argues that the factors provided by the Fifth Circuit favor the conclusion that Plaintiff spoke pursuant to his official duties, as Plaintiff's communications were directed to coworkers, arose from special knowledge gained through his employment, and were made internally rather than to the public.[59]

Considering the first factor in determining whether Plaintiff spoke as a private citizen, Plaintiff points to his job description as an engineer. Plaintiff argues "his statements were outside the scope of his official duties."[60] The Court acknowledges that

---

[55] *Garcetti v. Ceballos*, 547 U.S. 410, 413 (2006).
[56] *Lane v. Franks*, 573 U.S. 228, 240 (2014).
[57] *Rogers v. City of Yoakum*, 660 Fed.Appx 279, 283 (5th Cir. 2016) (citing *Davis v. McKinney*, 518 F.3d 304, 313 (5th Cir. 2008)).
[58] R. Doc. 18 at p. 6.
[59] R. Doc. 12-1 at p. 16.
[60] R. Doc. 1 at ¶ 31, p. 7.

9

it is clearly outside the scope of an engineer's job description to complain about a personal water bill.

The second factor—whether the speech resulted from special knowledge gained as an employee—weighs in favor of finding that the speech was made in Plaintiff's capacity as an employee. Plaintiff initiated the speech after encountering a software issue he believed caused erroneous water bills. At the hearing, Plaintiff testified that he spoke with Mr. Aguirre in detail about a systemic billing issue caused by faulty software, demonstrating a level of understanding and insight not possessed by the general public. The Court finds that Plaintiff's intimate awareness of the technical cause of the billing problem necessarily derived from his employment with Defendant. Accordingly, Plaintiff's speech resulted from special knowledge gained as an employee.

The third factor—whether the speech was directed internally or externally—also weighs in favor of finding that the speech was made in an employee capacity. Plaintiff directed his complaint internally to Mr. Aguirre, a coworker employed by Defendant. Mr. Aguirre testified that he is not a customer service employee, as Plaintiff suggested, but rather serves as the lead office assistant to the supervisor in the billing department—a position that does not involve direct public interaction. Plaintiff did not speak as a citizen seeking to inform the public of an issue; rather, he raised a concern with a colleague in the course of his employment. Plaintiff's speech was directed internally.

Regarding the second prong of the inquiry—whether the Plaintiff's speech addresses a matter of public concern—speech qualifies as a matter of public concern "when it can be fairly considered as relating to any matter of political, social, or other concern to the community, or when it is a subject of legitimate news interest; that is, a

subject of general interest and of value and concern to the public."[61] The court considers only "the speech for which the employee was disciplined . . . not some other speech."[62] However, when resolving this inquiry, the court does consider "the content, form, and context of a given statement."[63]

Plaintiff argues that he was addressing a matter of public concern. Plaintiff testified that he was disciplined because he vigorously defends employees' rights and frequently challenges Defendant's administration. He contends that he was not punished for his exchange with Mr. Aguirre, but rather that Defendant used the incident as a pretext to retaliate against him for his ongoing criticism. Plaintiff testified that he could not recall whether he made any statements about "kicking ass" or referred to the executive director as an "idiot." He did, however, recall complaining to Mr. Aguirre about the recurring billing software problems and expressing concern for the effective operation of Defendant's organization and for the public's ability to pay their water bills. The testimony of Mr. Aguirre and the other witnesses presented by Defendant, along with all documentation of the disciplinary proceedings, tells a different story. Defendant's witnesses testified that Plaintiff was heard yelling about how he "kicks ass" and how the executive director is an "idiot." Those witnesses who were able to hear the exchange consistently testified that Plaintiff made these statements. Plaintiff even apologized to Mr. Aguirre in open court for his statements. Further, Defendant's disciplinary records uniformly reflect that the discipline was imposed because of Plaintiff's inappropriate remarks.[64]

---

[61] *Moody v. Walker*, No. 20-2656, 2021 WL 3423597, at *11 (E.D. La. Aug. 5, 2021) (Vitter, J.) (quoting *Lane*, 573 U.S. at 241) (internal quotations omitted).
[62] *Commc'ns Workers of Am. v. Ector Cnty. Hosp. Dist.*, 467 F.3d 427, 437 (5th Cir. 2006).
[63] *Connick v. Myers*, 461 U.S. 138, 147-48 (1983).
[64] R. Doc. 29-13; R. Doc. 29-14; R. Doc. 29-15; R. Doc. 29-17; R. Doc. 29-18.

The Fifth Circuit has held that "[i]nternal personnel disputes and management decisions are rarely a matter of public concern."[65] The evidence establishes that Plaintiff was not disciplined for challenging Defendant's administration but rather for engaging in an unprofessional dispute with a coworker, during which he raised his voice, called the executive direct an "idiot," and told Mr. Aguirre that he "kicks ass." The content, form, and context of Plaintiff's speech—corroborated by the testimony of Defendant's witnesses, the disciplinary records, and Plaintiff's own admissions at the hearing—all point to a single conclusion: Plaintiff was disciplined for his conduct toward a coworker, not for speaking out as a private citizen on a matter of public concern.[66]

### 2. Plaintiff has failed to demonstrate a substantial threat of irreparable injury.

To obtain a preliminary injunction, Plaintiff also must satisfy the irreparable injury prong of the test.[67] Irreparable injury is defined as an injury for which there is no adequate remedy at law, including monetary damages.[68] In addition, Plaintiff must demonstrate that "irreparable injury is *likely* in the absence of an injunction."[69] The threatened injury must be "more than mere speculation,"[70] and this standard is not met if it is based on "an unfounded fear on the part of the applicant."[71]

Plaintiff argues that he will be irreparably injured by the suspension due to reputational harm and emotional distress.[72] Defendant responds that binding precedent precludes a finding of irreparable injury because any loss of pay from an improper

---

[65] *Gibson v. Kilpatrick*, 838 F.3d 476, 485 (5th Cir. 2016).
[66] Even if Plaintiff's complaints did invoke matters of public concern to some degree, the statements were predominately private. *Foley v. Univ. of Hous. Sys.*, 355 F.3d 333, 341 (5th Cir. 2003).
[67] *Miss. Power & Light Co. v. United Gas Pipe Line Co.*, 760 F.2d 618, 621 (5th Cir. 1985).
[68] *Daniels Health Scis., L.L.C. v. Vascular Health Scis., L.L.C.*, 710 F.3d 579, 585 (5th Cir. 2013).
[69] *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008).
[70] *Janvey v. Alguire*, 647 F.3d 585, 600 (5th Cir. 2011).
[71] *Holland Am. Ins. Co. v. Succession of Roy*, 777 F.2d 992, 997 (5th Cir.1985).
[72] R. Doc. 18 at p. 8.

suspension can be compensated through back pay; reputational harm is not considered irreparable in this circumstance; and Plaintiff has not produced any evidence of emotional distress.[73]

First, the Court notes that the suspension itself, to the extent it results in temporary loss of income, clearly does not constitute irreparable harm. "[T]emporary loss of income . . . does not usually constitute irreparable injury."[74] Moreover, the Fifth Circuit has held that "in lawsuits alleging wrongful termination or adverse employment action, the plaintiff is not ordinarily irreparably harmed."[75] The Fifth Circuit is clear that injuries stemming from adverse employment actions alone cannot constitute irreparable harm absent a showing of extraordinary circumstances.[76] Plaintiff's testimony, or lack thereof, regarding any potential reputational injury or injury due to emotional distress further renders such harm unlikely, and the burden of proof on this issue rests with him.

### 3. Plaintiff failed to demonstrate that his injury outweighs the threatened harm to Defendant and that granting the request would serve the public interest.

To obtain a preliminary injunction, Plaintiff also must establish that his alleged injury outweighs the threatened harm to Defendant and that granting a preliminary injunction would not disserve the public interest.[77] However, courts need not weigh the relative hardships between the parties unless the plaintiff first shows some likelihood of success on the merits.[78] Nevertheless, the Court notes that any injury Plaintiff sustains may be compensated through monetary remedies, whereas Defendant would be harmed if prevented from enforcing disciplinary measures in the face of employment disputes.

---

[73] R. Doc. 25 at pp. 3-4.
[74] *Sampson v. Murray*, 415 U.S. 61. 90 (1974).
[75] *Sambrano v. United Airlines, Inc.*, No. 21-11159, 2022 WL 486610, *6-7 (5th Cir. 2022).
[76] *Id.*
[77] *Planned Parenthood Ass'n of Hidalgo Cty. Tex., Inc. v. Suehs*, 692 F.3d 343, 348 (5th Cir. 2012).
[78] *Texas v. Seatrain Int'l, S.A.*, 518 F.2d 175, 180 (5th Cir. 1975).

13

The Court further notes that the public has a strong interest in allowing public entities to maintain discipline and manage their employees effectively.

Plaintiff is not entitled to a preliminary injunction based on his First Amendment claim.[79]

## II. Plaintiff has failed to establish he is entitled to a preliminary injunction based on his Fourteenth Amendment Procedural Due Process Claim.

Plaintiff seeks a preliminary injunction based on Defendant's violation of his Fourteenth Amendment right to due process. As explained above, a plaintiff seeking a preliminary injunction must establish (1) a substantial likelihood of success on the merits; (2) a substantial threat of irreparable injury if the injunction is not granted; (3) that the plaintiff's threatened injury outweighs the threatened harm to the party the plaintiff seeks to enjoin; and (4) that granting the preliminary injunction will not disserve the public interest.

### A. Plaintiff has failed to demonstrate a substantial likelihood of success on the merits of his Fourteenth Amendment claim.

Plaintiff alleges that Defendant deprived him of due process by imposing a suspension without affording him notice or an opportunity to be heard, thereby interfering with his constitutionally protected property interest in his continued employment. To succeed on this claim, Plaintiff must prove (1) he possesses a protected life, liberty, or property interest; (2) the government's action resulted in the deprivation

---

[79] The Court notes, however, that if Plaintiff had carried his burden and demonstrated a substantial likelihood of success on the merits of his First Amendment claim, this analysis would proceed differently, as most courts hold that the deprivation of a constitutional right adequately establish irreparable injury. Additionally, the Supreme Court has held that "[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976). Because Plaintiff has not shown a likelihood of success on his First Amendment claim and seeks an injunction to prevent harm flowing from an adverse employment action, he has failed to demonstrate irreparable injury. The request for a preliminary injunction could therefore be denied on this basis as well.

14

of that interest; and (3) the deprivation occurred without due process of law.[80] To satisfy the requirement of due process, the government must provide, at a minimum, notice and an opportunity to be heard.[81] As the Supreme Court has explained, "[t]he tenured public employee is entitled to oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story."[82]

It is undisputed that Plaintiff has a protected property interest in his civil service employment and that his suspension, if served, constitutes a deprivation of that interest. Accordingly, the Court must determine only whether Plaintiff has demonstrated that Defendant deprived Plaintiff of his property interest without due process in the course of his disciplinary proceedings.

Plaintiff argues in his post hearing brief that he was deprived of due process because Defendant failed to provide notice of the grievance filed against him by Mr. Aguirre,[83] applied a retroactive disciplinary policy, and disregarded its own procedures.[84] Defendant argues that Plaintiff received adequate notice through a notice of intent to recommend suspension, a pre-disciplinary hearing letter, and a suspension determination letter; that the disciplinary policy was properly applied; and that all required procedures were followed.[85] Defendant notes that the relevant Civil Service

---

[80] *Morris v. Livingston*, 739 F.3d 740, 749-50 (5th Cir. 2014).
[81] *Id.* at 750 (quoting *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 313 (1950)).
[82] *Cleveland Bd. Of Educ. V. Loudermill*, 470 U.S. 532, 546 (1985).
[83] R. Doc. 26 at p. 2. Plaintiff argues that he was not provided notice of the specific charges against him or an explanation of the evidence against him. R. Doc. 10 at p. 6. The pre-hearing notice letter sent on February 3, 2025 reiterated the key allegations of Mr. Aguirre's grievance and sufficiently informed Plaintiff of the substance of the complaint against him. R. Doc. 22-9. The notice of intent for suspension sent on January 6, 2025 also detailed the allegations. R. Doc. 22-8.
[84] R. Doc. 26 at p. 4.
[85] R. Doc. 17 at pp. 10-11; R. Doc. 25 at pp. 5-8. During the preliminary injunction hearing, Ms. Kimberly Batiste testified that a pre-disciplinary hearing was held, during which Plaintiff's written response to the allegations against him was read aloud, after which a decision was rendered. However, Ms. Curtis, an interim employee relations manager employed by Defendant, testified that no pre-disciplinary hearing occurred because Plaintiff submitted written responses and informed Ms. Curtis that he would not be attending the hearing. In its post-hearing brief, Defendant clarifies that Ms. Batiste lacked personal

15

Rules require a hearing only when an employee faces termination, not suspension.[86] Therefore, Defendant argues that providing Plaintiff with a hearing opportunity for a three-day suspension actually exceeded the procedural requirements of the Civil Service Rules.[87] Defendant adds that, in any event, due process was satisfied because Plaintiff received notice of the allegations forming the basis of the disciplinary proceedings, was provided an opportunity to attend a hearing, and—by his own choice—submitted written statements in lieu of attending, thereby satisfying the opportunity-to-be-heard requirement.

The Court finds that Plaintiff is unlikely to succeed on the merits of his claim that he was denied due process. It is undisputed that Plaintiff received multiple documents detailing the allegations against him, providing adequate notice. Plaintiff was also given the opportunity to be heard, either by submitting a written response or appearing at a hearing—a hearing, the Court notes, that is not required when an employee only faces suspension. Plaintiff, of his own volition, chose to submit a written response, stating: "I write to formally respond to the allegations and disciplinary recommendation outlined in connection with the November 12, 2024, incident."[88] He concluded his response by requesting "the committee to carefully review the facts of this case and recognize that the proposed suspension is neither justified nor supported by clear and convincing evidence."[89] Additionally, Plaintiff acknowledges in his complaint that he "participated in

---

knowledge regarding whether a pre-disciplinary hearing was held, and that Ms. Curtis's testimony accurately reflects how the proceedings unfolded. R. Doc. 25 at p. 5, n. 3.  In any event, because a hearing is not required by the Civil Service Rules when facing a proposed suspension, and because Plaintiff was afforded an opportunity to respond through his written response, the existence or nonexistence of a pre-disciplinary hearing is immaterial to the Court's analysis. Rule IX of the Civil Service Commission (Apr. 1, 2025), https://perma.cc/R2P2-QNWL.
[86] Rule IX of the Civil Service Commission (Apr. 1, 2025), https://perma.cc/R2P2-QNWL.
[87] *Id.*
[88] R. Doc. 29-16 at p. 1.
[89] R. Doc. 29-1, at p. 3.

16

a disciplinary hearing by submit[ing] a written reply to the allegations before the SWBNO Hearing Committee."[90]

Plaintiff cannot have his cake and eat it too. It is clear to this Court that he was provided with notice of the allegations and an opportunity to respond—an opportunity he exercised through written submissions. Plaintiff cannot voluntarily decline to attend a hearing, which was not required in the first place, submit written responses disputing the allegations, and then claim that his due process rights were violated. Accordingly, Plaintiff has failed to demonstrate a substantial likelihood of success on the merits of his Fourteenth Amendment claim.

### B. Plaintiff has failed to demonstrate a substantial threat of irreparable injury

Although the Court notes that Plaintiff's failure to demonstrate a substantial likelihood of success on the merits precludes the issuance of a preliminary injunction, the Court will nonetheless briefly address the remaining requirements for a preliminary injunction.

To obtain a preliminary injunction, Plaintiff must satisfy the irreparable injury prong of the test.[91] Irreparable injury is defined as an injury for which there is no adequate remedy at law, including monetary damages.[92] In addition, Plaintiff must demonstrate that "irreparable injury is *likely* in the absence of an injunction."[93]

Plaintiff argues that he will be irreparably injured by the suspension due to reputational harm and emotional distress.[94] Defendant responds that binding precedent

---

[90] R. Doc. 1 at ¶ 1, p. 3.
[91] *Miss. Power & Light Co. v. United Gas Pipe Line Co.*, 760 F.2d 618, 621 (5th Cir. 1985).
[92] *Daniels Health Scis., L.L.C. v. Vascular Health Scis., L.L.C.*, 710 F.3d 579, 585 (5th Cir. 2013).
[93] *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008).
[94] R. Doc. 18 at p. 8.

precludes a finding of irreparable injury because any loss of pay from an improper suspension can be compensated through back pay; reputational harm is not considered irreparable in this circumstance; and Plaintiff has not produced any evidence of emotional distress.[95]

First, the Court notes again that the suspension itself, to the extent it results in temporary loss of income, clearly does not constitute irreparable harm. "[T]emporary loss of income . . . does not usually constitute irreparable injury."[96] Moreover, the Fifth Circuit has held that "in lawsuits alleging wrongful termination or adverse employment action, the plaintiff is not ordinarily irreparably harmed."[97] The Fifth Circuit is clear that injuries stemming from adverse employment actions alone cannot constitute irreparable harm absent a showing of extraordinary circumstances.[98] Additionally, Plaintiff's lack of testimony regarding any potential injury further renders such harm unlikely.

The Court notes, however, that if Plaintiff had carried his burden and demonstrated a substantial likelihood of success on the merits of his Fourteenth Amendment claims, this analysis would proceed differently, as most courts hold that the deprivation of a constitutional right adequately establishes irreparable injury.[99] Because Plaintiff has not shown a likelihood of success on his Fourteenth Amendment claim and seeks an injunction to prevent harm flowing from an adverse employment action, he has failed to demonstrate irreparable injury. The request for a preliminary injunction could therefore be denied on this basis as well.

---

[95] R. Doc. 25 at pp. 3-4.
[96] *Sampson v. Murray*, 415 U.S. 61, 90 (1974).
[97] *Sambrano v. United Airlines, Inc.*, No. 21-11159, 2022 WL 486610, *6-7 (5th Cir. 2022).
[98] *Id.*
[99] *Book People, Inc. v. Wong*, 91 F.4th 318, 340-41 (5th Cir. 2024).

### C. Plaintiff failed to demonstrate that his injury outweighs the threatened harm to Defendant or that granting the request would serve the public interest.

To obtain a preliminary injunction, Plaintiff also must establish that his alleged injury outweighs the threatened harm to Defendant and that granting a preliminary injunction would not disserve the public interest.[100] However, courts need not weigh the relative hardships unless a likelihood of success on the merits has been demonstrated.[101] Nevertheless, the Court notes that any injury Plaintiff may sustain can be compensated through monetary remedies, whereas Defendant would be harmed if prevented from enforcing disciplinary measures in the face of employment disputes. The Court further notes that the public has a strong interest in allowing public entities to maintain discipline and manage their employees effectively.

For the reasons detailed above, the Court finds that Plaintiff has failed to carry his burden and will deny his request for a preliminary injunction based on a Fourteenth Amendment violation.

## CONCLUSION

Accordingly;

**IT IS ORDERED** that Plaintiff's request for a preliminary injunction is **DENIED**.[102]

New Orleans, Louisiana, this 15th day of October, 2025.

*[signature: Susie Morgan]*
**SUSIE MORGAN**
**UNITED STATES DISTRICT JUDGE**

---

[100] *Planned Parenthood Ass'n of Hidalgo Cty. Tex., Inc. v. Suehs*, 692 F.3d 343, 348 (5th Cir. 2012).
[101] *Texas v. Seatrain Int'l, S.A.*, 518 F.2d 175, 180 (5th Cir. 1975).
[102] Plaintiff did not consent to the trial on his request for a preliminary injunction and permanent injunction at the same time. Nonetheless, evidence received at the preliminary injunction that would be admissible at the trial becomes part of the record and need not be repeated at trial. Fed. R. Civ. P. 65(a)(2).